COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-249-CV

 

 

DALLAS/FORT
WORTH

INTERNATIONAL AIRPORT BOARD                                         APPELLANT

 

                                                   V.

 

SHARON FUNDERBURK                                                           APPELLEE

 

                                              ------------

 

           FROM THE 141ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








The primary issue we address in this appeal is
whether Appellant Dallas/Fort Worth International Airport Board (DFW Board) is
immune from suit for alleged violations of the Texas Commission on Human Rights
Act (TCHRA or the Act).  See Tex. Lab. Code Ann. '
21.002(8)(D) (Vernon Supp. 2005), '' .051,
.106, .252, .254 (Vernon 1996).[1]  Because we hold that Appellant falls within
the TCHRA=s definition of Aemployer@ as a Astate instrumentality@ and
because the TCHRA waives sovereign immunity from suit as to the entities
defined by the Act as employers, we will affirm the trial court=s
judgment denying Appellant=s plea
to the jurisdiction.

II.  Factual and Procedural Background








Appellee Sharon Funderburk claims that her
employer, the DFW Board, discriminated against her on the basis of her gender
by repeatedly refusing to give her promotions and pay raises.  Funderburk has over thirty-two years=
experience with and service for the DFW Board=s
Department of Public Safety and repeatedly made the top score on the captain=s
test.  She is also the only female
lieutenant on the DFW Board=s master
rolls.  After Funderburk was passed over
for the position of captain in the Anti-Air Piracy Division, she filed a charge
of discrimination with the Texas Workforce Commission=s Civil
Rights Division, alleging gender discrimination.  The Commission issued a Notice of Right to
File a Civil Action, and Funderburk filed the present suit.

The DFW Board filed a plea to the jurisdiction,
claiming that it was immune from suit for any violations of the TCHRA.  Following a hearing, the trial court denied
the DFW Board=s plea to the jurisdiction, and
the DFW Board perfected this interlocutory appeal.  In two issues, the DFW Board claims that the
trial court erred by denying its plea to the jurisdiction because no
legislative consent to suit exists and because the TCHRA does not clearly and
unambiguously waive governmental immunity as to the DFW Board. 

III.  Standard of Review

We review the trial court=s ruling
on a plea to the jurisdiction based on immunity from suit under a de novo
standard of review.  Tex. Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (2004); Tex.
Natural Res. Conserv. Comm'n v. IT‑Davy, 74 S.W.3d 849, 855 (Tex.
2002).  Whether undisputed evidence of
jurisdictional facts establishes a trial court=s
jurisdiction is a question of law.  Miranda,
133 S.W.3d at 226.  Here, the parties
concede that the facts are undisputed. 
Thus, we determine as a matter of law whether the undisputed facts
establish jurisdiction.

 

 








IV.  The TCHRA Waives Immunity as to State
Instrumentalities,

and The DFW Board is a AState
Instrumentality@








The TCHRA prohibits employers from discriminating
on various grounds, including gender.  See
Tex. Lab. Code Ann. '' 21.051,
.106.  AEmployer@ is
defined, for purposes of the statute=s
prohibition of discrimination, as including Aa county,
municipality, state agency, or state instrumentality, regardless of the number
of individuals employed.@ 
Id. ' 21.002(8)(D).  Thus, the law is settled that the TCHRA
clearly and unambiguously waives governmental immunity for the governmental
entities that are statutorily defined as employers.  See, e.g., Little, 148 S.W.3d at
376-77 (recognizing that the Texas Department of Criminal Justice is a state
agency subject to the TCHRA=s waiver
of immunity); Tex. Dep=t of
Criminal Justice v. Cooke, 149 S.W.3d 700, 704 (Tex. App.CAustin
2004, no pet.) (stating that the TCHRA Aprovides
a limited waiver of sovereign immunity when a governmental unit has committed
employment discrimination on the basis of race, color, disability,
religion, sex, national origin, or age@)
(emphasis added); King v. Tex. Dep=t of
Human Servs. ex rel. Bost, 28 S.W.3d 27, 30 (Tex. App.CAustin
2000, no pet.) (recognizing that the TCHRA Acontains
such a waiver [of sovereign immunity] by including state agencies in the Act's
definition of >employer=@); Sauls
v. Montgomery County, 18 S.W.3d 310, 315 (Tex. App.CBeaumont
2000, no pet.) (holding that Athe
Legislature has, in clear and unambiguous language, waived sovereign immunity
against elected public officials and governmental entities defined by the act
to be employers@).

The Beaumont court in Sauls succinctly
explained that the TCHRA clearly and unambiguously constitutes a waiver of
sovereign immunity as to those governmental entities meeting the Act=s
definition of Aemployer.@

The right to bring suit is established in section
21.254, which provides,  "Within 60
days after the date a notice of the right to file a civil action is received,
the complainant may bring a civil action against the respondent."  Tex.
Lab. Code Ann. ' 21.254. "Respondent"
is defined as "the person charged in a complaint filed under this chapter
and may include an employer. 
..." [Id.] '
21.002(13) (emphasis added).  ARespondent,"
thus, includes Montgomery County and Williams, as both are
"employers" as defined by the Act. 
Hence, the language of the Act allows for suits to be brought against
governmental entities such as Montgomery County and against elected officials
such as Williams.  Further, the Act
allows for courts to award both compensatory and punitive damages, except that
punitive damages may not be recovered from a governmental entity. [Id.] '
21.2585. This exception would not be necessary if the Legislature did not
intend for governmental entities to be sued under the Act.  Moreover, we do not presume the Legislature
included language without a purpose.

18 S.W.3d at 315.








Thus, the only question presented here is whether
the DFW Board falls within the TCHRA=s
definition of an employer.  Counties,
municipalities, state agencies, and state instrumentalities are all statutorily
defined as employers for purposes of the TCHRA. 
See Tex. Lab. Code Ann.
' 21.002
(8)(D).  Funderburk contends that the DFW
Board is a state instrumentality, and the DFW Board contends that it is not.[2]  The term Astate
instrumentality@ is not defined in the
TCHRA.  Accordingly, we apply rules of
statutory construction and look to controlling case law to determine whether
the DFW Board is a state instrumentality. 
See Tex. Gov=t Code
Ann. '' 311.001‑.034 (Vernon
2005) (the Code Construction Act).








Before engaging in a statutory construction
analysis, we examine the origins of the DFW Board.  The DFW Board is statutorily created pursuant
to Chapter 22 of the Texas Transportation Code, ACounty
and Municipal Airports.@ 
See Tex. Transp. Code Ann.
' 22.074
(Vernon 1999 & Supp. 2005) (discussing creation of joint board); see
generally id. '' 22.001-.901.  The functions performed by the DFW Board
include public and governmental functions exercised for a public purpose.  Id. '
22.002.  Additionally, a joint board like
the DFW Board may Aplan, acquire, establish,
construct, improve, equip, maintain, operate, regulate, protect, and police an
airport . . . jointly operated,@ and if
the constituent agencies of a joint board are populous home-rule
municipalities, like the DFW Board=s
constituent agencies, the powers quoted above are exclusively the powers of the
board, not of the constituent municipalities. 
Id. ' 22.074(c), (d); City of
Irving v. Dallas/Fort Worth Int=l
Airport Bd., 894 S.W.2d 456, 467-68 (Tex. App.CFort
Worth 1995, writ denied).








Moving to a statutory construction analysis
concerning the meaning of the term Astate
instrumentality,@ we may consider matters
including (1) the object the legislature sought to obtain; (2) the
circumstances under which the legislature enacted the statute; (3) the
legislative history; (4) common law or former statutory provisions, including
laws on the same or similar subjects; and (5) the consequences of a particular
construction.  See Tex. Gov=t Code Ann. ' 311.023
(Vernon 2005).  Two of the stated
objectives the legislature sought to obtain through the enactment of the TCHRA
were to Aprovide
for the execution of the policies of Title VII of the Civil Rights Act of 1964
and its subsequent amendments@ and to Amake
available to the state the full productive capacities of persons in this state.@ See
Tex. Lab. Code Ann. ' 21.001
(1), (5) (Vernon 1996).  These
stated objectives of the TCHRA express a legislative intent to eliminate
workforce discrimination in Texas, not to whittle away and to narrow the group
of employers prohibited from engaging in workforce discrimination.  See Purdin v. Copperas Cove Econ.
Dev. Corp., 143 S.W.3d 290, 301 (Tex. App.CWaco
2004, pet. dism=d) (holding economic development
corporation to be state instrumentality subject to claims made under the TCHRA
and explaining that the employment discrimination prohibitions in chapter 21
are to be generally applied).  The
circumstances under which the legislature enacted the TCHRA and its legislative
history do not provide insight into the legislature=s intent
concerning the term Astate instrumentality@ beyond
the plain wording of subsection (8)(D).  See
Tex. Lab. Code Ann. ' 21.002
(8)(D).  The Act=s former
statutory provisions, and the consequences of an exclusionary construction of
the term Astate instrumentality,@
however, weigh in favor of the conclusion that the DFW Board is a state
instrumentality.  As noted by the Purdin
court, the Act was amended in 1997 to expressly define Astate
agency.@  Purdin, 143 S.W.3d. at
298.  The term Astate
agency@ was
given a broad definition as including

(A)  a board, commission,
committee, council, department, institution, office, or agency in the executive
branch of state government having statewide jurisdiction;

 

(B)  the supreme court, the
court of criminal appeals, a court of appeals, or the State Bar of Texas or
another judicial agency having statewide jurisdiction; or

 

(C)  an institution of higher
education as defined by Section 61.003, Education Code.

 








Tex. Lab. Code Ann. '
21.002(14).  The legislature=s
adoption of a broad definition of the term state agency evidences an intent to
prohibit discrimination in state government. 
A narrow, extremely limited construction of the term Astate
instrumentality@ as not including the DFW Board
would permit workplace discrimination at DFW International Airport, where
hundreds of people work.  This
construction is inconsistent with the stated purposes of the TCHRA, as well as
with the legislature=s prior actions that broadened
the reach of the TCHRA by broadly defining Astate
agency.@  Our statutory construction analysis compels
the conclusion that the legislature intended to include organizations like the
DFW Board within the scope of the term Astate
instrumentality.@








Other courts, including this court in Tarrant
County Hospital District v. Henry, have likewise held that an entity
created pursuant to Texas statutory authority, and whose purpose includes the
performance of public and governmental functions are a state
instrumentality.  See, e.g., 52
S.W.3d 434, 445-48 (Tex. App.CFort
Worth 2001, no pet.) (holding hospital district to be state instrumentality
subject to claims made under TCHRA); Purdin, 143 S.W.3d at 301 (holding
economic development corporation to be state instrumentality subject to claims
made under TCHRA); Vela v. Waco Indep. Sch. Dist., 69 S.W.3d 695, 700
(Tex. App.CWaco 2002, pet. withdrawn) (holding
school districtCin claim made prior to amendment
defining state agencyCto be state instrumentality
subject to claims made under TCHRA); Crow v. Rockett Special Util. Dist.,
17 S.W.3d 320, 325 (Tex. App.CWaco
2000, pet. denied) (holding special utility district to be state
instrumentality subject to claims made under TCHRA).  We hold that the DFW Board is a state
instrumentality subject to claims made under the TCHRA.








The DFW Board contends that it is not a state
instrumentality because it is an instrumentality of a municipality and
therefore is not an employer under the Act. 
But the DFW Board took the opposite position in City of IrvingCarguing
it was an agent of the state of TexasCand in
that case we upheld the constitutionality of Texas Transportation Code
subsections 22.074(c) and (d), vesting power over the airport property
exclusively with the DFW Board, to the exclusion of the municipalities.  City of Irving, 894 S.W.2d at
467-68.  By virtue of this statute, the
DFW Board cannot be considered a mere agent of a municipality.  See Tex.
Transp. Code Ann. ' 22.074(c), (d); City of
Irving, 894 S.W.2d at 467-68 (recognizing legislature reallocated the
regulatory authority from the cities over the property on which DFW airport is
located to the airport board).  We thus
decline to adopt the DFW Board=s
argument in this case that it is merely an instrumentality of a municipality.       The DFW Board, while acknowledging the above
case law supporting the conclusion that it is a state instrumentality,
nonetheless contends that the legislature=s recent
enactment of section 311.034 of the government code and the Texas Supreme Court=s recent
opinion in Wichita Falls State Hospital v. Taylor mandate a different
result.  See Tex. Gov=t Code Ann. ' 311.034
(Vernon 2005); Taylor, 106 S.W.3d 692 (Tex. 2003).  We address these contentions in turn and
conclude that neither the application of government code section 311.034 nor
the application of the Taylor analysis alters our determination that the
DFW Board is a state instrumentality, that a state instrumentality is defined
as an Aemployer@ to whom
the TCHRA applies, and that the TCHRA waives sovereign immunity for an entity
statutorily defined as an Aemployer.@

In 2001, the Legislature enacted the following
provision as section 311.034 of the Code of Construction Act.

In order to preserve the legislature's interest in managing state
fiscal matters through the appropriations process, a statute shall not be
construed as a waiver of sovereign immunity unless the waiver is effected by
clear and unambiguous language.  In a
statute, the use of Aperson,@ as defined by Section
311.005 to include governmental entities, does not indicate legislative intent
to waive sovereign immunity unless the context of the statute indicates no
other reasonable construction.

 








Tex. Gov=t Code Ann. '
311.034.  But here, there is no questionCand the
DFW Board does not contend otherwiseCthat the
TCHRA clearly and unambiguously waives sovereign immunity when the governmental
entity is one of the entities specifically listed in the TCHRA=s
definition of employer.  See Tex. Lab. Code Ann. '
21.002(8)(D) (defining employer as including Aa
county, municipality, state agency, or state instrumentality@); see
also, e.g., Little, 148 S.W.3d at 376-77; Cooke, 149 S.W.3d at 704; King,
28 S.W.3d at 30; Sauls, 18 S.W.3d at 315.  Thus, section 311.034's mandate that a
statute not be construed as a waiver of sovereign immunity unless the waiver is
effected by clear and unambiguous language is satisfied, given our holding that
the DFW Board is a state instrumentality.








The DFW Board appears to argue that the TCHRA
must clearly and unambiguously waive governmental immunity specifically as to
it.  We cannot agree with this
contention.  Such a holding would require
the TCHRA to specifically list every state employer subject to the Act=s
prohibition against discrimination.  The
TCHRA defines an employer as including categories of governmental employersCcounties,
municipalities, state agencies, or state instrumentalities.  Tex.
Lab. Code Ann. ' 21.002(8)(D).  No state employer is specifically
identified.  See id.  Thus, under the DFW Board=s position,
the TCHRA would not waive sovereign immunity as to any governmental entity
because none are specifically identified. 
The TCHRA clearly and unambiguously waives sovereign immunity as to the
governmental entities defined as employers. 
A state instrumentality is defined as an employer, and the DFW Board is
a state instrumentality.








We next address the DFW Board=s
contention that the Texas Supreme Court=s
decision in Wichita Falls State Hospital v. Taylor alters the analysis
we are to apply.  See 106 S.W.3d
at 692.  Taylor did not involve
the TCHRA.  Taylor involved a suit
brought under section 321.003 of the Texas Health and Safety Code for a
violation of the Apatient=s bill
of rights,@ which is codified in chapter
321.  See id. at 693-94.  Unlike the TCHRA, however, chapter 321 of the
health and safety code contains no express language or definitions including
governmental entities within the scope of that statute.  See
Tex. Health & Safety Code Ann. '
321.001-.004 (Vernon 2001).  The supreme
court in Taylor undertook an extensive analysis to determine whether,
despite the absence of express language or definitions pulling state mental
health facilities within the scope of the statute, the legislature intended for
the statute to effectuate a waiver of sovereign immunity against state mental
health facilities for violations of the patient=s bill
of rights.  See id. at
694-702.  Because the statute at issue
here, the TCHRA, does contain express language placing counties,
municipalities, state agencies, and state instrumentalities within the scope of
the statute, the Taylor analysis is inapplicable.[3]  

We overrule the DFW Board=s first
and second issues.

V.  Conclusion

Having overruled the DFW Board=s first and
second issues, we affirm the trial court=s
judgment.

 

 

SUE
WALKER

JUSTICE

 

PANEL B:   GARDNER, WALKER, and MCCOY, JJ.

 

DELIVERED: January 26,
2006











[1]When the TCHRA was
recodified into the Texas Labor Code, the revised law omitted as unnecessary
the short title of the act.  Little v.
Tex. Dep=t of Criminal Justice, 148 S.W.3d 374, 377-78
(Tex. 2004).  In addition, the Commission
on Human Rights was recently abolished and its powers and duties were
transferred to the newly‑created Civil Rights Division of the Texas
Workforce Commission.  Id.  Nonetheless, for simplicity, we refer to
chapter 21 of the labor code as the TCHRA.





[2]Funderburk also
alternatively contends that the DFW Board satisfies the TCHRA=s definition of a Aperson@ and is therefore subject
to the Act=s waiver of
immunity.  Because we hold that the DFW
Board is a state instrumentality, we do not reach Funderburk=s alternative argument
that the DFW Board  satisfies the Act=s definition of a
person.  See Tex. R. App. P. 47.1.





[3]The DFW Board=s contention that Taylor
alters the analysis applicable to TCHRA claims is likewise undermined by the
fact that the supreme court, after its decision in Taylor, issued Little reversing
a summary judgment for the Texas Department of Criminal Justice on the plaintiff=s TCHRA discrimination
claim.