**Reverse and Render in part; Reverse and Remand; Opinion Filed April 4, 2014.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-12-00777-CV

**DALLAS/FORT WORTH INTERNATIONAL AIRPORT BOARD, Appellant**
**V.**
**ASSOCIATION OF TAXICAB OPERATORS, USA, Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 10-00279**

## OPINION

Before Justices Moseley, Francis, and Lang
Opinion by Justice Moseley

Dallas/Fort Worth International Airport Board (Airport Board) appeals the trial court's judgment, which voided a resolution that the Airport Board passed, denied any injunctive relief, and awarded attorney's fees to the Association of Taxicab Operators, USA (Association). In three issues, the Airport Board argues: (1) the trial court erred by voiding the Airport Board's 2012 resolution granting head-of-the-line privileges to taxicabs powered by compressed natural gas at Dallas/Fort Worth International Airport (DFW Airport); (2) the Airport Board is not required to obtain approval from its constituent cities for every ordinance, resolution, rule, or order necessary to manage, govern, and use DFW Airport; and (3) by approving the Code of Rules and Regulations for DFW Airport, the airport's constituent cities already gave approval to the Airport Board's authority to manage vehicle emissions and the taxicab queue at DFW

Airport. We agree with the Airport Board's second issue, and therefore sustain its first issue. As a result, we need not reach its third issue. We reverse the trial court's judgment and render judgment that the Association's request for declaratory judgment and request for permanent injunction are denied. We reverse the trial court's award of attorney's fees to the Association and remand that issue to the trial court for further proceedings.

## FACTUAL BACKGROUND

### A. Creation of DFW Airport & the Airport Board

In 1965, Dallas and Fort Worth entered into a Contract and Agreement to construct an international airport to serve the Dallas/Fort Worth metropolitan area. The Agreement contemplated the creation of a regional airport authority, a special purpose governmental entity separate from each of the cities, that would govern and operate the new airport. Dallas and Fort Worth agreed to construct and operate the proposed airport jointly as a municipal airport. *Dallas/Fort Worth Int'l Airport Bd. v. City of Irving*, 854 S.W.2d 161, 164 (Tex. App.—Dallas 1993), *judgment vacated without reference to merits*, 868 S.W.2d 750 (Tex. 1993) (per curium). In 1968, the cities of Dallas and Fort Worth signed a contract creating the Airport Board to operate DFW Airport. *City of Irving v. Dallas/Fort Worth Int'l. Airport Bd.*, 894 S.W.2d 456, 459 (Tex. App.—Fort Worth 1995, writ denied). The cities are co-owners of DFW Airport and the Airport Board operates the airport on their behalf; the Airport Board is comprised of members appointed by the two city councils. *Legend Airlines, Inc. v. City of Fort Worth*, 23 S.W.3d 83, 86 (Tex. App.—Fort Worth 2000, pet. denied).

### B. The Airport Board's 2009 Resolution

On November 5, 2009, the Airport Board passed the Dedicated Compressed Natural Gas Taxicab Incentive Program Policy (First CNG Policy), which granted head-of-the-line privileges at the airport to taxicabs powered by compressed natural gas (CNG). The Association sued the

Airport Board seeking a declaration voiding the First CNG Policy. After a bench trial, the trial court entered a final judgment on October 28, 2011, that stated: (1) "the Court concludes that [the Association's] request for declaratory judgment and request for permanent injunction should be denied;" (2) "[i]t is therefore ORDERED, ADJUDGED, and DECREED that [the Association's] request for declaratory judgment[1] and for permanent injunction is DENIED. The temporary injunction issued by this Court . . . is dissolved and the resolution as passed by the Board is void;[2]" and (3) "[i]t is further ORDERED, ADJUDGED, and DECREED that all other relief requested in this case is DENIED."

On February 13, 2012, the Association filed a motion for judgment nunc pro tunc, which the trial court granted on February 27, 2012.[3] The judgment nunc pro tunc: (1) granted the Association's request for declaratory judgment: (2) stated the "resolution as passed by the Board is void," (3) denied the Association's request for a permanent injunction, and (4) denied all other relief requested in the case. The parties refer to the case that resulted in the October 28, 2011 judgment and February 27, 2012 judgment as the "First Case."

## C. The Airport Board's 2012 Resolution

On January 5, 2012, the Airport Board passed the Taxicab Compressed Natural Gas Incentive Policy (Second CNG Policy), which stated that "[a] taxicab operator who makes the investment in a CNG operated taxicab will be given "head of the line" privileges." The Association again challenged the resolution. Another bench trial was held. The trial court's final judgment: (1) granted the Association's request for declaratory relief, declaring "Defendant's [Second CNG Policy] and the policy enacting it are void;" (2) awarded attorney's

---

[1] The words "declaratory judgment" have two lines through them, appearing the trial court's intention was to mark them out.

[2] The clause "the resolution as passed by the Board is void" is written by hand whereas the rest of the final judgment is type written.

[3] The Board challenges whether the trial court properly entered the judgment nunc pro tunc. We do not need to resolve that issue. We refer to the trial court's February 27, 2012 document titled Final Judgment Nunc Pro Tunc as the "February 27, 2012 judgment."

fees to the Association; and (3) denied the Association's application for permanent injunction. The final judgment was entered on May 30, 2012. The parties refer to this case as the "Second Case."

## STANDARD OF REVIEW

Whether the trial court erred by voiding the Airport Board's CNG resolution in the Second Case is a matter of statutory construction. Statutory construction presents a question of law that we review de novo. *First Nat. Collection Bureau, Inc. v. Walker*, 348 S.W.3d 329, 335 (Tex. App.—Dallas 2011, pet. denied) (citing *City of DeSoto v. White*, 288 S.W.3d 389, 394 (Tex. 2009)).

## CHAPTER 22 OF THE TEXAS TRANSPORTATION CODE

The parties disagree about whether the Airport Board had the authority to pass the Second CNG Policy. The answer to that question lies with Chapter 22 of the Texas Transportation Code, which governs county and municipal airports.

### A. Chapter 22 Includes Two Grants of Authority

Chapter 22 includes two separate grants of authority for the operation of an airport. The first empowers a "local government" to "adopt ordinances, resolutions, rules, and orders necessary to manage, govern, and use an airport or air navigation facility under its control." TEX. TRANSP. CODE ANN. § 22.014. The Association believes this provision applies to the case before us, and argues that because the Second CNG Policy is not necessary to manage, govern, or use DFW Airport, the Airport Board lacked the authority to pass the resolution.

The second grant of authority in chapter 22 applies to a "joint board" that has been tasked with operating an airport. Section 22.074 permits a joint board to "plan, acquire, establish, construct, improve, equip, maintain, operate, regulate, protect, and police an airport."

*Id.* § 22.074 (c). The Airport board argues section 22.074 gives it the authority to enact the Second CNG Policy. We agree.

Chapter 22 empowers the city councils of Dallas and Fort Worth to act jointly to create the Airport Board, which the statute calls a "joint board," with some limitations, a joint board has all of the powers that the city councils had with respect to an airport, including the power to operate the airport. *See id.* § 22.074 (a)-(c). Ordinarily, before a joint board can adopt a resolution that is necessary to manage, govern, and use the airport, it must obtain approval of the two city councils. *See id.* §§ 22.014, 22.074(b), 22.082.

However, the Airport Board is not a typical "joint board." Rather, it is a joint board whose constituent cities are "populous home-rule municipalities."[4] Because Dallas and Fort Worth are populous home-rule municipalities, and these two populous home-rule municipalities created the Airport Board, the statute gives the Airport Board the *exclusive power* to operate DFW Airport. *See id.* § 22.074(c), (d) ("If the constituent agencies of a joint board are populous home-rule municipalities, a power described by Subsection (c) is exclusively the power of the board. . .). Therefore, the Airport Board is not required to obtain approval from the city councils of Dallas and Fort Worth before it makes decisions with respect to operating the airport. *See, generally, Dallas/Fort Worth Intern. Airport Bd. v. Funderburk*, 188 S.W.3d 233, 236 (Tex. App.—Fort Worth 2006, pet. granted, judgm't vacated w.r.m.).

**B. Operation of DFW Airport**

Chapter 22 does not define the term "operate." Accordingly, we look to the ordinary meaning of the word as defined by the dictionary. *See Pratt-Shaw v. Pilgrim's Pride Corp.*, 122 S.W.3d 825, 833 (Tex. App.—Dallas 2003, pet. denied).

---

[4] A "populous home-rule municipality" is "a home-rule municipality with a population of more than 400,000," which would include both Dallas and Fort Worth. TEX. TRANSP. CODE ANN. § 22.071(4).

"Operate" means "to cause to function usu. by direct personal effort: work" and "to manage and put or keep in operation whether with personal effort or not." WEBSTER'S THIRD NEW INT'L DICTIONARY 1581 (1981). By definition, then, the Airport Board has the exclusive power manage DFW Airport and keep it in operation. That exclusive power includes, among other things, the power to provide for and manage the flow of ground transportation on the airport property for the purpose of transporting passengers to and from the airport. The Airport Board's exclusive power, then, includes the power to pass the Second CNG Policy at issue in this case. Therefore, we conclude the trial court erred by concluding the Airport Board lacked that power, by granting the Association's request for declaratory relief, and by declaring the Second CNG Policy to be void. We sustain the Airport Board's first issue and second issue to the extent we determine that the Airport Board had the power to pass the Second CNG Policy.

We do not reach the question of whether the Second CNG Policy was "necessary to manage, govern, and use" the DFW Airport under section 22.014. *See* TEX. TRANSP. CODE ANN. § 22.014(a). The language in sections 22.014(a) and 22.074 are separate grants of authority to the entity operating an airport. Because the Airport Board, as a joint board whose constituent agencies are populous home-rule municipalities, had the power necessary to pass the resolution under section 22.074, we need not consider whether section 22.014(a) also granted it the power to do so. *See* TEX. R. APP. P. 47.1.

Additionally, because we reverse the trial court's judgment and render judgment that the Association's request for declaratory judgment and request for permanent injunction are denied, we need not address the third issue raised by the Airport Board as that would not yield any additional relief. *See* TEX. R. APP. P. 47.1.

**ATTORNEY'S FEES**

A trial court may award attorney's fees that are both "reasonable and necessary" and "equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008). In light of our disposition of the case on appeal, we reverse the award of attorney's fees in favor of the Association and remand the issue so the trial court may consider the award of attorney's fees. *See Edwards Aquifer Auth. v. Chem. Lime, Ltd*., 291 S.W.3d 392, 405 (Tex. 2009) (stating the trial court should have the opportunity to reconsider its award of attorney's fees where claimant is no longer the prevailing party); *LG Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632, 642 (Tex. App.—Dallas 2012, pet. denied) (citing *Hartsell v. Town of Talty*, 130 S.W.3d 325, 329 (Tex. App.—Dallas 2004, pet. denied)).

**IMPACT OF FIRST CASE ON SECOND CASE**

The Association makes several arguments about whether our review of the Second Case is precluded by the First Case. The Association argues that the issues decided in the First Case, which was not immediately appealed, are binding on the Second Case. Because all relevant issues were decided in the First Case, the Airport Board's appeal of the Second Case is barred by the doctrine of collateral estoppel. We disagree.

The two judgments produced by the First Case both state that the first CNG "resolution *as passed* by the Board is void" (emphasis added). The judgment in the First Case did not bar the Airport Board from passing a new CNG policy. In fact, it denied the Association's request for a permanent injunction and only declared that the First CNG policy was void *as passed*. It did not determine whether the Airport Board had the power to pass a CNG policy in the future and, if it did, on what grounds. Whether the Airport Board's Second CNG policy was void could only have been litigated in the Second Case and, thus, litigation about the Second CNG policy was not barred by collateral estoppel. *See generally Texas Dept. of Pub. Safety v. Petta*, 44

–7–

S.W.3d 575, 579 (Tex. 2001) (collateral estoppel prevents the relitigation of identical issues of law or fact that were actually litigated and were essential to the final judgment in a prior suit); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 0817 (Tex. App.—Dallas 2012, no pet.).

## CONCLUSION

We reverse the trial court's judgment and render judgment that the Association's request for declaratory judgment and request for permanent injunction are denied. We reverse the trial court's award of attorney's fees to the Association and remand that issue to the trial court for further proceedings.

120777F.P05

/Jim Moseley/
JIM MOSELEY
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DALLAS/FORT WORTH
INTERNATIONAL AIRPORT BOARD,
Appellant

No. 05-12-00777-CV        V.

ASSOCIATION OF TAXICAB
OPERATORS, USA, Appellee

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 10-00279.
Opinion delivered by Justice Moseley.
Justices Francis and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that:

Appellee Association of Taxicab Operators, USA's request for declaratory relief is **DENIED** and appellee's request for permanent injunction is **DENIED.**

This case is **REMANDED** solely for a determination of an award of reasonable attorney's fees, if any.

It is **ORDERED** that appellant Dallas/Fort Worth International Airport Board recover its costs of this appeal from appellee Association of Taxicab Operators, USA.

Judgment entered this 4th day of April, 2014.

/Jim Moseley/
JIM MOSELEY
JUSTICE

–9–